UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **MARIA MALDANADO,**<br><br>Plaintiff,<br><br>v.<br><br>**THE PICTSWEET CO.,**<br><br>**Defendant.** | CASE NO. 1:09-cv-01166-JDB-egb<br><br><br>Jury Trial Demanded |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, The Pictsweet Company ("Pictsweet"), through undersigned counsel, submits its Response in Opposition to Plaintiff Maria Maldanado's ("Maldanado") Motion for Partial Summary Judgment ("Motion") as follows:

**I. INTRODUCTION**

Maldanado has moved for partial summary judgment on her claim that Pictsweet interfered with her rights under the Family and Medical Leave Act ("FMLA") in violation of 29 U.S.C. § 2615(a)(1). Maldanado's Motion is premised, in significant part, on her contention that she provided adequate notice to Pictsweet of her need to take unforeseen, intermittent leave on February 2, 2009. Maldanado has filed her Motion before the parties have exchanged initial disclosures and written discovery or taken any depositions. While Pictsweet believes that the facts as revealed in the course of discovery will actually warrant a grant of <u>summary judgment to Pictsweet on all of Maldanado's claims</u>, there is, at present, a genuine issue of material fact as to whether Maldanado's notice to Pictsweet of her need for leave was sufficient and, thus, whether

Pictsweet violated Maldanado's FMLA Rights. Since Maldanado cannot demonstrate an absence of a genuine issue of material fact and her entitlement to partial summary judgment as a matter of law, her Motion must be denied.

## II. RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Pictsweet admits that Maldanado was an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2). (Ans., ¶ 5).

2. Pictsweet admits that it is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4). (Ans., ¶ 6).

3. Disputed in part. Pictsweet admits that it received the requisite certification from Maldanado's health care provider and subsequently granted Maldanado's request for intermittent FMLA leave. (Ans., ¶ 8). Specifically, in the Spring of 2008, Maldanado provided the Human Resources department with a Certification of Health Care Provider, which Pictsweet approved. Maldanado's Certification of Health Care Provider, dated April 17, 2008, stated that Maldanado's daughter suffers from a serious health condition and requires assistance with transportation to doctor's appointments. (Ex. 1: Decl. of S. Davis., ¶ 4).

While the remaining facts alleged in this Paragraph No. 3 – the nature of the treatment received by Maldanado's daughter on February 2, 2009, or any recommendation relating to her care for the remainder of that day – are immaterial, Pictsweet is without knowledge necessary to form a belief as to the truth of those facts and would therefore dispute same. (*Id.* at ¶ 11). Pictsweet also disputes any implication that, on February 2, 2009, Maldanado requested use of intermittent FMLA leave in accordance with Pictsweet's usual procedure for requesting leave for a previously-certified condition or that it approved Maldanado's use of intermittent FMLA leave on that date. *Id.* at ¶ 7.

4.     Disputed in part. Pictsweet admits that, on the morning of February 2, 2009, Maldanado contacted her supervisor, Tom Darnell ("Darnell") by telephone, to inform him she could not work that day as scheduled because her daughter was sick. (Ans., ¶ 9). However, Pictsweet denies that Maldanado's notification to Darnell complied with the Company's usual and customary notice and procedural requirements for requesting leave. Under Pictsweet's Attendance Guidelines, "[e]mployees must notify the Human Resources Department at least one (1) hour in advance of their scheduled start time every day they are out except for scheduled vacation days." (emphasis added). Pictsweet implemented this notification procedure at its Bells, Tennessee, facility in October 2006, after it recognized a need for "centralized" reporting of unscheduled absences due to the relatively large number of supervisors working in that facility. On previously occasions, Maldanado contacted Human Resources directly, per Company procedure, when she had unexpected need to take leave and could not work as scheduled. (Id. at ¶¶ 5-7).

5.     Pictsweet admits that Maldanado received 3.0 attendance points for a "no call/no show" on February 2, 2009, because she did not report her absence to Human Resources as required by the Attendance Guidelines. Pictsweet also admits that, as a result of the no call/no show, Maldanado accumulated in excess of 10 attendance points and was discharged pursuant to Pictsweet's Attendance Guidelines. Pictsweet had previously notified Maldanado in writing, on January 27, 2009, that she had accumulated 7.5 attendance points and warned than an accumulation of 10 points would subject her to discharge. (Id. at ¶¶ 8-10).

### III.     LEGAL ARGUMENT

In her Motion, Maldanado claims that Pictsweet interfered with, or otherwise denied, her request for leave in violation of the FMLA, 29 U.S.C. § 2615. To establish that Pictsweet

3

interfered with her FMLA rights, Maldanado must show (1) she was a "covered employee" under the FMLA; (2) Pictsweet was an "employer" as defined by the FMLA; (3) she was entitled to FMLA leave; (4) she gave Pictsweet notice of her intent to take leave; and (5) Pictsweet denied or interfered with her request for FMLA leave. *See, e.g., Allen v. Butler County Comm'r*, Nos. 07-4320, 07-4329, 2009 U.S. App. LEXIS 18773, *36-37 (6th Cir. Aug. 18, 2009).[1]

Pictsweet does not dispute that Maldanado and Pictsweet are an "employee" and "employer," respectively, under the FMLA, nor does it dispute that Maldanado had been granted intermittent leave in April 2008 to transport her child to and from doctors' appointments. (Ans., ¶¶ 5-6). However, Maldanado cannot show that there is no genuine issue of material fact as to whether she satisfied the remaining two elements of her claim. As set forth below, Maldanado did not notify Pictsweet of her need to take leave on February 2, 2009, in a manner consistent with Pictsweet's usual, reasonable procedure for requesting leave. Thus, Pictsweet did not improperly deny Maldanado's purported "request" for intermittent FMLA leave, as any such request was subject to denial based on her failure to follow Pictsweet's usual notification procedure.

Since Maldanado fails to establish that no disputed material fact currently exists as to whether she, on February 2, 2009, sufficiently notified Pictsweet of her need to take unforeseen leave, Maldanado's Motion must be denied.

A.      **Summary Judgment Legal Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the

---

[1] Pictsweet has attached unreported cases as Collective Exhibit 2.

4

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). In ruling on a motion for summary judgment, the Court must "construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor." *Buillion v. Ford Motor Co.*, 60 F. Supp. 2d 765, 767 (M.D. Tenn. 1999) (citing <u>Anderson</u>, 477 U.S. at 255). The Court may enter summary judgment <u>only</u> if it concludes that a "fair minded jury could not return a verdict in favor of the non-movant." *Bickford v. Live Care Ctr. or Amer.*, No. No 1:07-cv-295, 2008 U.S. Dist. LEXIS 100879, at * 7 (E.D. Tenn. Dec. 15, 2008). If genuine issues of material fact exist, summary dismissal is inappropriate. *Russell v. BBG Prod. Techs., Inc.*, No. No. 3:07-0260, 2007 U.S. Dist. LEXIS 61129, at * 8 (M.D. Tenn. Aug. 20, 2007).

B.      <u>**No Notice Given In Accordance With Its Usual Custom and Procedure**</u>

Maldanado erroneously concludes, based on a selective and inaccurate interpretation of Pictsweet's Handbook policies and its Attendance Guidelines, that she satisfied her obligation to notify Pictsweet of her need to take unforeseeable leave on February, 2, 2009. The FMLA regulations relating to employee notice requirements for unforeseen FMLA leave specifically address an employee's obligation to comply with the notice policy of her employer. The regulations state

> [w]hen the need for leave is not foreseeable, an employee <u>must</u> comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. <u>For example, an employer may require employees to call a designated number or a specific individual to request leave.</u>

29 C.F.R. 825.303 (2008) (emphasis added). The regulations state that an employee's failure to follow her employer's usual notice and procedural requirements, coupled with an absence of unusual circumstances, can result in the denial of FMLA-protected leave. *Id.*

Moreover, the final rules implementing the recent amendments to the FMLA, effective January 16, 2009, expressly acknowledge an employer's interest in having its employees adhere to its usual notification procedure:

> [T]he [Department of Labor] recognizes that call-in procedures are a routine part of many workplaces and are <u>critical to an employer's ability to manage its work force</u>. Adherence to such policies is <u>even more critical when the need for leave is unforeseen</u>. Accordingly, the final rule in § 825.303(c) provides that, absent unusual circumstances, employees <u>must</u> comply with their employer's usual and customary notice and procedural requirements for requesting leave.

The Family and Medical Leave Act of 1993; Final Rule, 73 Fed. Reg. 68,009 (January 16, 2009) (emphasis added). Like the regulations, the final rule unequivocally states that "FMLA-protected leave may be delayed or denied when an employee does not comply with the employer's usual notice and procedural requirements and no unusual circumstances justify the failure to comply." *Id.* at 68,007.

Adherence to Pictsweet's procedure for reporting unanticipated absences is critical to its ability to manage its workforce and continue operations when its employees, unexpectedly, cannot work as scheduled. Maldanado's notification to her supervisor regarding her unforeseen absence on February 2, 2009, simply did not comport with the Company's usual procedure of notifying Human Resources of such absences. For that reason, and due to a lack of any unusual circumstances that would justify her non-compliance with Pictsweet's usual procedure,

6

Maldanado was not "on approved FMLA leave," nor did Pictsweet inappropriately deny Maldanado's use of FMLA leave, on February 2, 2009.

### 1. Plaintiff was required to notify Human Resources.

Pictsweet's Attendance Guidelines direct any employee who is unable to work a shift as scheduled, for <u>any</u> reason other than scheduled vacation, to contact Human Resources within one (1) hour of the start of that shift. The Attendance Guidelines identify three (3) telephone numbers that an employee may use to contact Human Resources to notify Pictsweet of any unforeseen or unscheduled absence. Maldanado did not follow this protocol on February 2, 2009, to report that she could not work that day as scheduled.

In her motion, Maldanado does not argue that she was unfamiliar with the Attendance Guidelines and the requirements set forth therein, or even that she did, in fact, contact Human Resources in accordance with the Attendance Guidelines.[2] Instead, Maldanado inexplicably argues that she was <u>not</u> obligated to follow the unforeseen absence reporting procedure set forth in the Attendance Guidelines but could, instead, based on Pictsweet's Employee Handbook, notify her supervisor of any need to take unforeseen leave. She makes this argument in spite of the fact that she had heretofore used the required procedure on several occasions prior to February 2, 2009. In attempting to establish the elements of her claim, Maldanado both misinterprets the Employee Handbook's provisions and mischaracterizes their relationship to the Attendance Guidelines.

First, Maldanado cites page 11 of the Employee Handbook as evidence that reporting an unforeseeable absence to her supervisor was allowed under Company policy. The Handbook

---

[2] The cases cited by Maldanado in her Motion are also silent as to an employee's obligation to follow the notification procedure of her employer and/or the impact of an employee's failure to follow that procedure on any request for leave. (Pl. Mem. in Supp. of Part. Summ. Judg., p. 8).

7

provision referenced by Maldanado relates to the procedure an employee must follow when making an <u>initial</u> request for leave under the FMLA:

> For unforeseen events, such as accidental injury causing a serious health condition, premature birth, or a sudden change in your health, you must notify the Company of your need for a leave as soon as possible. You are expected to give notice to the Company within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances. You should <u>notify</u> the Company preferably <u>by submitting the application for a leave</u>, but at a minimum, by verbally notifying the Human Resources Manager or your Supervisor. <u>The application form must be submitted as soon as possible, even if you have provided oral notification</u>.

(Pl. Mem. in Supp. of Part. Summ. Judg., Pl. Aff., Ex. B, p. 11) (emphasis added). The above provision does not, as Maldanado suggests, speak to notification requirements for an employee who had <u>already been granted intermittent FMLA leave</u> for a qualifying condition <u>and needs to use that leave at a later date</u>; rather, it relates to notification requirements for employees making an <u>initial</u> request for FMLA leave, as evidenced by multiple references to the completion of the application for leave. Thus, this Employee Handbook provision is inapplicable to any determination of whether Maldanado notified Pictsweet, in a manner consistent with its usual notice and procedural requirements, of her need to take unforeseeable leave for a <u>previously-certified</u> condition.

Second, Maldanado claims that notice to her supervisor was sufficient per the Employee Handbook's Attendance Policy. The Attendance Policy, found at page 16 of the Handbook, states that "all absences must be reported by calling the department supervisor or the Human Resources department at least one hour prior to the start of the shift." (*Id.* at p. 16-17). However, the Attendance Guidelines, implemented in October 2006, expressly state in the <u>first</u> sentence that "<u>the Attendance Policy in the handbook will be administered pursuant to the</u>

8

guidelines." (*See* Decl. of S. Davis, Ex. B) (emphasis added). Clearly, Pictsweet intended, after October 2006, to follow the Attendance Guidelines in handling and addressing attendance-related matters, including an employee's reporting obligation for unscheduled absences. Since October 2006, Pictsweet has adhered to the Attendance Guidelines by requiring employees who are unable to work as scheduled to notify Human Resources directly.

Maldanado's attempt to somehow "invalidate" the Attendance Guidelines based on a purported conflict with the provisions of the Employee Handbook is both misguided and disingenuous. The Attendance Guidelines updated the existing Attendance Policy in several regards. Perhaps most notably, the Attendance Guidelines implemented an "attendance point" system that replaced the progressive discipline system described in the Attendance Policy. However, in her Motion, Maldanado does not seek to invalidate the attendance point system based on any "conflict" with the Attendance Policy.[3] Conveniently, Maldanado seeks to invalidate only the portion of the Attendance Guidelines that establishes her obligation to notify Human Resources of any unanticipated absence – presumably because she recognizes her failure to follow Pictsweet's notification procedure and the death knell of that failure to her FMLA interference claim.

Contrary to Maldanado's contention – wholly unsupported by the applicable documents – notifying Human Resources directly of any unforeseen, unscheduled absence was both the policy and practice at Pictsweet's Bells, Tennessee, facility. Maldanado herself followed that policy by contacting Human Resources on prior occasions when she was unable to work as scheduled. She inexplicably failed to contact Human Resources on February 2, 2009, and, as a result of her failure to follow Pictsweet procedure, she was not approved for leave that day; rather, her

---

[3] Since Maldanado apparently concedes that she was terminated after accruing more attendance points than permitted under the Attendance Guidelines, her failure to attack the attendance point system articulated in the Attendance Guidelines is particularly telling. (Pl. Mem. in Supp. of Mot. for Part. Summ. Judg., p. 3).

9

absence on February 2, 2009, was properly characterized as a "no-call/no-show" and resulted in her accrual of 3 attendance points.

### 2. No unusual circumstances are present.

Maldanado does not allege in her motion, nor does she have facts to prove, that any unusual circumstance excused her failure to notify Human Resources of her need to take unforeseen leave. Pictsweet's Attendance Guidelines require only that its employees contact Human Resources directly to report any unexpected absence. Maldanado was obviously capable of placing a telephone call to Human Resources, as she was able to contact her supervisor by telephone. Given that no unusual circumstances were present, Maldanado should have notified Human Resources of her absence on February 2, 2009. Since she failed to contact Human Resources as required, she was not approved for intermittent FMLA leave on February, 2, 2009, but was instead issued attendance points for a no call/no show per the Attendance Guidelines.

### CONCLUSION

Maldanado has not demonstrated the absence of a genuine issue of material fact as to whether she notified Pictsweet in accordance with its usual notice and procedural requirements of her need for unforeseen leave on February 2, 2009. Maldanado was inarguably aware of the Attendance Guidelines, which explicitly identified the procedure all employees must follow when unable to work as scheduled for _any_ reason other than planned vacation. Since Maldanado failed to follow Pictsweet's notification procedure on February 2, 2009, as mandated by Pictsweet's policy and practice _and_ the FMLA regulations, she was not approved for FMLA leave that day. Her absence was properly classified as a no-call/no-show, and the attendance points she received resulted in her termination.

As Maldanado has not established that she notified Pictsweet of her need for unforeseen leave in accordance with its policies, or that Pictsweet denied or interfered with her rights under the FMLA, she has not established her entitlement to reinstatement to her position with previous benefits and seniority. (*See* Pl. Mem. in Supp. of Part. Summ. Judg., p. 8). Maldanado's Motion must therefore be denied.

Respectfully submitted,

s/N. Victoria Holladay

N. Victoria Holladay (#18487)
Emily C. Pera (#023830)

FORD & HARRISON LLP
795 Ridge Lake Blvd., Suite 300
Memphis, TN  38120
Ph.: (901) 291-1500
Fax: (901) 291-1501

Counsel for Defendant
THE PICTSWEET COMPANY

## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that a true and correct copy of the foregoing Response to Plaintiff's Motion for Partial Summary Judgment was served upon the following, via the Court's CM/ECF filing system, on this 30th day of September 2009:

>  Jonathan L. Bobbitt, Esq.
>  Justin S. Gilbert, Esq.
>  GILBERT RUSSELL McWHERTER PLC
>  101 North Highland Avenue
>  Jackson, TN  38301
>  jbobbitt@gilbertfirm.com
>  jgilbert@gilbertfirm.com

                                                s/N. Victoria Holladay
                                               N. VICTORIA HOLLADAY

MEMPHIS:195405.1